**Evelyn Deloris BRAY, Plaintiff,**

v.

**NEW YORK LIFE INSURANCE COMPANY, Defendant.**

**No. 86 Civ. 0897 (KTD).**

United States District Court, S.D. New York.

Oct. 14, 1987.

Donovan Maloof Walsh & Repetto, New York City, for plaintiff; James W. Carbin, of counsel.

Epstein Becker Borsody & Green, P.C., New York City, for defendant; Richard J. Reibstein, Amy J. Levine, of counsel.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

The defendant, New York Life Insurance Company, ("NYLIC"), brings this motion for summary judgment pursuant to Fed.R. Civ.P. 56 against the plaintiff, Evelyn Deloris Bray, ("Bray"), claiming that Bray's employment discrimination action is barred by the federal Full Faith and Credit Statute, 28 U.S.C. § 1738 (1983), and the common law doctrine of *res judicata*. NYLIC argues that the judgment of the New York Supreme Court of Westchester County dismissing plaintiff's appeal from the administrative determination of the New York State Division of Human Rights ("NYSDHR") for failure to meet the requirements of the statute of limitations precludes Bray's cause of action.

### FACTS

Bray initiated this employment discrimination action by filing complaints with the federal Equal Employment Opportunity Commission ("EEOC") and the NYSDHR. The EEOC did not act on the complaint for 60 days, as required, in order to allow the NYSDHR to attempt a resolution first. The NYSDHR resolution, a finding of no probable cause to believe that the complained of discrimination occurred, was issued on April 25, 1985. Bray appealed that decision to the State Courts of New York. While that appeal was pending, on September 20, 1985 the EEOC issued its own finding of "no probable cause" and notified Bray of her right to initiate an employment

discrimination action in federal court. Bray, consequently, timely filed this action.

On February 9, 1984, Bray was fired from her position as a Training Apprentice Field Underwriter ("TAFU") for NYLIC. Bray had held that position for just one day short of three years. Three years is the length of a standard NYLIC training program as contained in the TAFU employment contract. At the end of three years, a TAFU can be certified as a Full Field Underwriter, and acquire additional employment and compensation benefits.

A TAFU agreement includes requirements that the trainee meet established sales and productivity standards. NYLIC asserts that Bray's dismissal was based on her poor job performance. This assertion is made despite documents provided by Bray which demonstrate that, although not at the top of her group in sales performance, Bray did qualify for an honorable mention on several NYLIC performance status lists. The papers in this action provide no evidence that NYLIC warned, reprimanded, or in any way expressed concern to Bray in a manner which would indicate that her performance was below an acceptable level.

Bray is a black woman and was pregnant at the time of her discharge. She contends that this discharge was due to the racially and sexually discriminatory motives of her supervisors at NYLIC. Evidence of such discriminatory motive is alleged to be present in comments made by supervisors. These comments include: an assertion that Bray was hired "only to meet personnel quotas," that a black man recommended by Bray would not be hired because the manager "didn't want any more blacks or jews in the office," and that had the manager been aware that Bray was pregnant "he would never have accepted [her] in his office." In addition, plaintiff asserts that she was not provided with essential training assistance and was transferred from one office to another in order to conceal discriminatory practices.

Approximately two months after her discharge Bray filed complaints of racial and sexual discrimination by NYLIC with both the NYSDHR and the EEOC. During the following four months additional papers were filed with the NYSDHR by both NYLIC and Bray. NYSDHR then conducted an investigation which resulted in a report by a State Division Investigator, Sheila Reed–Ortega. The report reviewed all papers submitted by the parties and concluded that "[a]lthough complainant's rebuttal statement is extensive, there does not appear to be any supportive evidence that her termination was based on the fact that she is a Black female." Defendant's Notice of Motion for Summary Judgment, Exh. B.

On April 25, 1984 NYSDHR sent Bray a letter indicating its finding of "no probable cause" and advising Bray of her right to appeal to the state courts. The letter contained general statements regarding the procedural form and timing requirements for such an appeal and a notice regarding the possible effect of such an appeal. The notice read as follows:

PLEASE TAKE FURTHER NOTICE that a complainant who seeks state judicial review, and receives an adverse dicision [sic] therein, *may* lose his or her right to proceed subsequently in federal court under Title VII, by virtue of *Kremer v. Chemical Construction Co.*, 456 U.S. 461 [102 S.Ct. 1883, 72 L.Ed.2d 262] (1982).

Defendant's Notice of Motion for Summary Judgment, Exh. D. (emphasis added). This letter was the only notice provided to Bray, a layperson and *pro se* plaintiff, which mentioned the fact that her choice of how to proceed on the NYSDHR ruling might affect her future rights to appeal from an as yet unknown EEOC decision. Thus, the "choice" provided to Bray, assuming that she understood the implication of the citation to *Kremer,* was the Hobson's choice of appealing the NYSDHR decision and risking loss of the right to proceed in federal court or waiting for the EEOC decision and its attendant right to proceed in federal court but meanwhile losing any right to proceed in New York State courts. This is hardly a choice Bray could have made wisely.

Bray chose to appeal to New York State court. She filed the appropriate notice of appeal with the Appellate Division of the Supreme Court of New York, but she was one day late. The New York statute of limitations for filing an appeal in New York is 60 days; plaintiff filed on the 61st.

While review by the Appellate Division was pending, § 298 of the New York Executive Law (McKinney's 1982 & Supp 1987) was amended. As a result, Bray's appeal was transferred for review to the Supreme Court of Westchester County[1]. The transfer from the Appellate Division occurred on September 12, 1985. Bray was unaware of the transfer.

Soon after the transfer between the New York courts of Bray's appeal from the NYSDHR opinion, the EEOC issued a determination of "no probable cause" and a "Notice of Right to Sue." The latter included the statement that Bray had 90 days from receipt of the notice to commence a lawsuit in a United States District Court under Title VII. Bray timely commenced this action on December 3, 1985.

On April 4, 1986 Bray's application for counsel was granted by this court. On May 28, 1986 the law firm of Donovan, Maloof, Walsh & Kennedy served a notice of appearance as representatives for Bray. This was Bray's first opportunity to consult with an attorney in connection with this action.

On June 11, 1986, almost one full year from the day Bray filed her notice of appeal with the New York State Appellate Division, the New York State Supreme Court received Bray's motion from the Appellate Division. Two months later that Court denied Bray's appeal for her failure to commence the proceeding within sixty days. It is this decision which NYLIC now contends is sufficient to bar Bray from any access to federal court on her discrimination claim against NYLIC.

## DISCUSSION

The issue raised by NYLIC in its motion to dismiss is whether a federal court must give preclusive effect to a state court's summary dismissal, on statute of limitations grounds, of a state administrative agency's rejection of an employment discrimination claim. In this situation, the state court's decision would be *res judicata* in the State's own courts and thus bar plaintiff from any judicial review on the merits.

█ It is a well-settled rule that *res judicata* cannot apply to determinations by state administrative tribunals. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Johnson v. New York City Transit Authority*, 639 F Supp. 887, 891 (E.D.N.Y. 1986). Although the New York State Division of Human Rights, an administrative tribunal, is currently the only forum which has reviewed the merits of Bray's claim, that decision is technically not at issue here. Rather, the relevant decision is the state court's summary dismissal of Bray's claim for failure to file the appeal of the administrative determination within the sixty day limitations period.

The law governing the preclusive effect which a federal court must afford a state *court* decision stems from both the federal Full Faith and Credit statute, Title 28 U.S.C. § 1738 (1983), and the doctrine of *res judicata*.

Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a

1. At the time Bray filed her petition for review with the Appellate Division, petitions for judicial review of administrative decisions were required to be directed in the first instance to the Appellate Division (N.Y. Exec. Law § 298 McKinney's 1982). An amendment to this law, effective July 16, 1985, required judicial review of such administrative determinations to "be brought in the supreme court in the county wherein the unlawful discriminatory practice which is the subject of the order occur[red]...." N.Y.Exec.Law § 298 (McKinney's 1982 & Supp. 1987).

different cause of action involving a party to the first case.

*Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (citation omitted).

■ The resulting rule is that a federal court is required to give preclusive effect to a state court judgment whenever the court from which the judgment emerged would do so. In *Kremer, supra,* the Supreme Court specifically held that this rule applies to Title VII actions. The fact that the claim before this court is based on a federal statute, while the state court claim arose pursuant to New York's employment discrimination law, does not preclude the application of *res judicata* in this case. The *Kremer* case, which was brought under the same New York and federal statutes which are at issue in this case, stated that:

> the alleged discriminatory acts are prohibited by both federal and state laws. The elements of a successful employment discrimination claim are virtually identical.... The Appellate Division's affirmance of the [NYSDHR's] dismissal necessarily decided that petitioner's claim under New York law was meritless, and thus it also decided that a Title VII claim arising from the same events would be equally meritless.

*Kremer,* 456 U.S. at 479–80, 102 S.Ct. at 1896 (footnotes omitted).

Bray contends that her case should be distinguished from *Kremer* because *Kremer* held that the district court was bound to grant the state court decision preclusive effect after the New York State Appellate Division had affirmed the NYSDHR's decision on the merits rather than dismissed for failure to meet the statute of limitations. Bray's argument is that the state court's dismissal on limitations grounds has denied her a full and fair opportunity to present her case in a judicial forum.

■ The preclusive effect of a dismissal by a New York State Court is controlled by the New York collateral estoppel rule. The rule is that a dismissal for failure to meet the statute of limitations is treated as a

dismissal on the merits. As stated by the New York Court of Appeals:

> the impact of the Statute of Limitations, though often denominated as procedural, in a practical sense may also be said to be substantive; as we have had occasion to observe, "while a time bar is usually said to affect the remedy ... its interposition is at least as often the difference between life or death for the right as well" as the remedy. Suffice it to say that a dismissal on these grounds is at least sufficiently close to the merits for claim preclusion purposes to bar a second action. . . .

*Smith v. Russell Sage College,* 54 N.Y.2d 185, 194, 429 N.E.2d 746, 750, 445 N.Y.S.2d 68, 72 (1981) (citations omitted).

Although I find that this rule is harsh in the case of a *pro se* plaintiff, any discretion to waive the limitations requirement lay with the state court. I do not have the power to review such a discretionary matter. The fact that Bray has proceeded *pro se* cannot alter the disposition of this case. "[T]he *pro se* litigant must be bound by the same rules of law as those represented by counsel, despite the federal courts' generally flexible approach to *pro se* pleadings." *Kent v. New York City Dep't of Sanitation,* 549 F.Supp. 570, 573 (S.D.N.Y.1982).

The extent of my power to review in this situation is to ensure that the New York State procedure has satisfied the applicable requirements of the due process clause. As this issue too has been specifically addressed by the Supreme Court, it will suffice here to say that the New York procedures for investigating a claim of employment discrimination have been found adequate under the due process clause. *Kremer,* 456 U.S. at 482–484, 102 S.Ct. at 1898, 1899.

In the instant case, it does not seem just that a *pro se* plaintiff be dismissed without any opportunity for judicial review on the merits simply because she was one day late in filing papers. However, I am bound by the above precedents to grant defendant NYLIC's motion for summary judgment. I do so reluctantly.

The motion to dismiss is granted.

SO ORDERED.