GRIFFITH, Circuit Judge,
concurring:
In disposing of this appeal, we take the extraordinary step of deciding the merits of a controversy before ascertaining our jurisdiction. I write separately to emphasize the limits of our power on this occasion.
“Every federal appellate court has a special obligation to satisfy itself ... of its own jurisdiction” before proceeding to the merits of a case. Steel Co. v. Citizens for a Better Env’t, 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (internal quotation marks omitted). When we act without jurisdiction, “more than legal niceties are at stake.... The statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibration of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects.” Id. at 101, 118 S.Ct. 1003. Article III, § 1 delegates to Congress the power to decide when and on what subjects courts of appeals may act. U.S. Const. art. Ill, § 1. Pursuant to that power, Congress has restrained us from acting prior to the entry of a final judgment in the district court. See 28 U.S.C. § 1291. No such final judgment has issued below, so unless we are operating within one of the narrow exceptions to the rule of finality (such as the collateral order doctrine), we have no authority to “pronounce upon the meaning ... of a state or federal law.” Steel Co., 523 U.S. at 101, 118 S.Ct. 1003.
We dispose of this appeal without resolving whether we possess jurisdiction only because the appeal does not require us to “pronounce upon the meaning ... of a state or federal law.” The Supreme Court has held that we need not resolve complex jurisdictional questions on the rare occasion that the outcome of the case is “foreordained” by precedent — in other words, where it stands on all fours with a prior decision. See supra at 936-37 (citing Nor *939 ton v. Mathews, 427 U.S. 524, 96 S.Ct. 2771, 49 L.Ed.2d 672 (1976)). The majority explains that its Rule 6(b) analysis is dictated by our holding in Argentine Republic v. National Grid Pic., 637 F.3d 365, 368 (D.C.Cir.2011) (per curiam). I join that conclusion but not because it is clear to me that the rule in Argentine Republic would apply in every instance where a district court invokes Rule 6(b) to alter a statutory deadline or that the rule would apply particularly to the time limit in the D.C. Anti-SLAPP Act. Indeed, those issues were not considered by the district court or argued to us. I join the court’s conclusion only because O’Connor failed to make any argument for why his case is legally distinguishable from Argentine Republic. We said enough about the meaning of Rule 6(b) in Argentine Republic that we may settle this case without “pronouncing] upon the meaning” further.
But the crucial point to keep in mind is that we may not use Norton to “reach[ ] a question of law that otherwise would have gone unaddressed.” Steel Co., 523 U.S. at 98, 118 S.Ct. 1003. In a very real sense, that means that when we bypass a thorny jurisdictional problem to dispose of an appeal under Norton, we cannot make any new law at all. Argentine Republic is the law of this circuit on Rule 6(b), and this case should be seen only as an application of its holding in a case where no one argued that it did not apply. Indeed, nobody should cite our discussion of Rule 6(b) as binding precedent. Litigants wishing to learn whether Rule 6(b) may be used to extend the statutory time limit found in the D.C. Anti-SLAPP Act are advised to consult Argentine Republic, which provides the latest word on the subject.